**ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS, v. LEWIS. (No. 3115.)**

(Court of Civil Appeals of Texas. Texarkana. Nov. 23, 1925. Rehearing Denied Dec. 3, 1925.)

**I. Master and servant ⬤⟶276(1)—Evidence held to support recovery by employee scalded.**

Conflicting evidence *held* to support verdict against railroad company for employee for injuries received when scalded by water while cleaning engine flues.

**2. Damages ⬤⟶173(1)—Admission in evidence of earnings, on issue of damages for permanent injury, held not error.**

Admission in evidence of earnings of injured employee, to enable jury to determine amount of damages for permanent injury by comparing earnings just before injury with earnings thereafter, *held* not error.

**3. Appeal and error ⬤⟶197(6)—Variance between allegation and proof as to rupture held not reversible error.**

Variance or departure between allegation and proof of injury by rupture, not misleading opposite party to his prejudice, *held* not reversible error.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Action by Willie Lewis, by his next friend, against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

King, Mahaffey & Wheeler, of Texarkana, for appellant.

Wheeler & Robison, of Texarkana, and George W. Johnson, of New Boston, for appellee.

LEVY, J. The appellee, a minor about 20 years old, brought the suit by next friend for damages for personal injuries alleged to have been sustained by the negligence of an employee of appellant. It is alleged, as grounds of negligence, that:

"John Wofford, without knowledge of the plaintiff, began to fill the boiler of engine No. 541 with hot water, introducing the nozzle of a hose into an opening in the top of the boiler of the engine, and the said John Wofford negligently and carelessly introduced said nozzle into the said opening, and negligently and carelessly failed and refused to hold the same secure or to properly control it while it was introduced into the opening, and negligently and carelessly allowed it to fall out."

The hot water severely scalded the plaintiff, and, as further alleged, he was ruptured as follows:

"And that on account of said scalds and injuries and the intense heat of the water turned onto him, as aforesaid, by the said John Wofford, he jumped suddenly and strained himself and has become ruptured."

The appellant denied the allegations of the petition. The jury returned a verdict in favor of the appellee.

Appellee was employed as a "flue blower," and John Wofford as a "boiler washer," in the roundhouse of appellant at Commerce. It becomes necessary to clean out the flues and thoroughly wash out the boilers of locomotives after they have made their trips on the road, due to accumulations of mud from water, soot, and ashes. A "flue blower" performs his duties, as did the appellee in this particular instance, by going "into the flues," and, by use of an air hose, blowing out the ashes and soot. As described, "in order to get into the flues, you go into the fire box; that is, you first get up into the cab of the engine, where the engineer and fireman stay, then open a door ahead about 18 inches square and go into the fire box. The flues are where the fire goes through to heat up the boiler." A boiler washer performs his duties by inserting a rubber hose into the boiler and filling the boiler with hot water. The hose is about two inches in diameter, with "a nozzle on it somewhere between 18 or 20 inches long." One end of the hose is attached to a tank of hot water about the temperature of 180 degrees, and the nozzle at the other end is inserted into the boiler of the engine through a plug in the boiler. When the water is turned on it flows in a heavy stream into the boiler. The boiler washer stands on the ground, and not in the cab, to turn the water on. In the particular instance the appellee was engaged in cleaning or blowing out the flues of a locomotive in the usual and customary way, and had about "got through blowing the flues." John Wofford, in the course of his work, attached the hose to wash out the boiler of the particular locomotive, and at the time he knew that appellee was cleaning out the flues; but the evidence is in conflict as to whether or not he knew appellee was yet in the fire box when he turned on the water. When the water was turned on by John Wofford the nozzle of the hose inserted in the locomotive fell down or out of its fastening, casting the hot water on appellee and producing injuries, as he testified. The appellee states as follows:

"I got through blowing the flues, and was coming out of the fire box. As I got near to the door of the fire box I saw John Wofford stick the hose in above the fire box. The door is a narrow place, and I had to work my body out of it by putting one hand and side out at a time. When I got out I reached back in the fire box to get my torch, which I used, as it was nighttime. At that time he turned on the water, and the hose just come down—pointed downwards—and struck me on the head and knocked me over. The boiling hot water hit me all over on the left arm, side, and shoulder. I jumped and was trying to get out of the cab. I was jumping around in there trying to get

out. As to how I got out of there, I fell out and fell up against a tool box, and this knee stopped against. it, and the other one kept on by like that (indicating a straddle). It is 6 or 7 feet from the cab to the tool box, and I fell out. of the cab and just straddle of the tool box. I felt pain while that was going on— right back in there and down there (indicating) in my bag, and just above my private parts."

The injury suffered, as claimed, was being severely scalded and being ruptured. John Wofford testified: That he put the nozzle of the hose into the hole of the locomotive in the usual and customary way, and that it ·had never fallen down before that time, and that he saw no cause for it to come out on the present occasion. That when he turned the water on "Willie' Lewis was in the cab, and not in the fire box"; and "I told him, 'Look out, the water is coming.'" That when he heard the appellee hollo the ·water was at once turned off.

[1-3] After considering the record, we conclude the assignments of error should each be overruled, as not warranting a reversal of the judgment, since no injury resulted to the appellant in the matter complained of. The evidence, though conflicting, is reasonably sufficient to support the verdict of the jury as to liability and as to amount of the verdict. The charges to the jury covered the defense, and presented the issues affirmatively. The evidence as to earnings was offered and admitted solely to enable the jury to determine the amount of damages for "permanent injury" by comparing earnings just before injury with earnings after injury, claimed to be permanent. There is no substantial variance between the allegation and proof as to rupture—at least not such variance and departure as to mislead the opposite party to his prejudice. There is no contention that the tool chest was not there on the ground.

The judgment is affirmed.