STOTTS *v.* STATE.

Opinion delivered January 25, 1926.

1. CRIMINAL LAW—EVIDENCE—RES GESTAE.—Where an officer was
   shot by defendant while endeavoring to arrest defendant for sell-
   ing whiskey and the defense was that defendant did not recognize
   the officer, but thought that he was attempting to make a
   felonious entry into defendant's habitation, a remark by defend-
   ant's wife, made in defendant's presence, immediately preceding
   the shooting, that she had tried to get her husband to quit that
   business, was admissible both as part of *res gestae* and as tend-
   ing to prove that defendant knew that the person shot was an
   officer.

2. CRIMINAL LAW—COMPETENCY OF EVIDENCE.—All evidence is admis-
   sible which tends to prove the issue, and no facts are forbidden
   to be shown, except such as are incapable of affording any reason-
   able presumption or inference in elucidation of the matters
   involved in the issue.

3. CRIMINAL LAW—INSTRUCTION—GENERAL OBJECTION.—A case will
   not be reversed upon a general objection to an instruction not
   inherently erroneous and which, when construed with the other
   instructions, is not susceptible to an objectionable interpretation;
   if particular phraseology is objected to, special exception should
   be saved thereto.

Appeal from Crittenden Circuit Court; *W. W.
Bandy,* Judge; affirmed.

*Galloway & Weinstein,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden
Moose,* Assistant, for appellee.

WOOD, J. This is an appeal from a judgment sen-
tencing George Stotts to the penitentiary for fifteen years

for the offense of assault with intent to kill one Grady Harlan.

Harlan testified in substance that he was deputy sheriff of Crittenden County; that on the 7th of March, 1925, he and two others went down on the gravel road to No. 96, where they had received information that Stotts was selling liquor. They went to Stotts' house and sent a negro in to purchase some liquor. The negro called out that he wanted one, and Stotts brought it out. As he went to hand it to the negro, witness demanded his arrest, and he broke and ran. It was a dark night, but the moon was shining, and witness saw appellant handing the negro the liquor, and witness said to appellant, "Throw up your hands," whereupon appellant ran back in the house, and the light in the house went out. Appellant's wife was crying and taking on in there. Witness tried to tell her there wasn't anybody there to hurt them, and did so tell her. The appellant at this point objected to any conversation between the witness and appellant's wife.

It was shown that the conversation between the witness and appellant's wife was in the presence of appellant. The court thereupon overruled the objection of appellant, and permitted the witness to continue his testimony, which was substantially as follows: The house where appellant and his wife were was about twelve or sixteen or eighteen feet. It was narrow and built straight. Witness explained to appellant's wife when she went into hysterics that he was not going to hurt anybody, but that he was an officer of the law. He told appellant to come on and make bond; that it wasn't a serious offense. Appellant's wife heard witness state this. She told witness that she had been "trying to get the old man to quit that."

Upon objection being made by the appellant's counsel the court said to the jury, "I want to tell the jury now that there is some testimony here that this defendant's wife made the remark that she had been trying to get

her husband to quit that business, the supposition being that it was the liquor business. Under our law you can not convict a man for one crime because he has committed another, and you are told to disregard that testimony only in so far as it may show that this defendant knew what these officers were and their business being there. You may consider it for that, but because he has sold liquor doesn't shed any light as to whether or not he shot this man with intent to kill.''

Witness, continuing his testimony, said that he told appellant it was not such a serious crime he was charged with, and that he could come on to Marion and make bond. Appellant made no reply. Witness then told him, if he didn't come out, witness would have to come in and get him, and witness started in after him, and just as witness got to the door, he snapped on his flashlight, and as soon as witness put it on, appellant shot witness twice. Witness pointed out where the shots took effect. Witness fired in the direction in which he saw appellant's gun flash, and then stepped off of the porch and walked off. This occurred in Crittenden County. Witness got away as quickly as he could, and went to Marion to a hospital, where he was confined fifteen days. Witness could hear what was being said by appellant and his wife, but appellant was not talking loud, and appellant's wife was crying and taking on and making considerable noise.

Other testimony was introduced which substantially corroborated that of the witness Harlan. One of the witnesses stated that all he remembered hearing the appellant's wife say was, ''Go 'way—go on away and don't come in.'' He didn't hear appellant's wife make any statement that she knew Harlan was an officer. He heard Harlan tell appellant that he was a deputy sheriff, but appellant's wife continued to scream, ''Go away,'' whereupon Harlan stated that if appellant did not come out he would go in, and Harlan started in, and the shooting began.

The appellant testified that he was born in Crittenden County, and that with the exception of three years had lived there all of his life. He was hard of hearing. He lived at No. 96, close to Pinckney. On the night of the shooting he had retired. It occurred sometime after dark. He had never known Harlan, and had no feeling whatever against him. He was awakened by some one calling "Hello!" and a negro came to the door and wanted a half pint, which witness procured for him, and just as he got to the door some man stepped around the corner of the house and said, "Stick them up," and witness immediately jumped back into the boat and put out the light, not knowing that it was an officer, and thinking that he was a "hi-jacker" as there had been considerable trouble on the river with hi-jackers, and witness crossed to his bed and got his shotgun and loaded it. He said that his wife was screaming and crying, and that he was badly frightened, and when the door opened and Harlan's flashlight flashed on, he tried to shoot it out of his hand, and fired two shots only, whereupon the party seeking to enter his home began firing upon him very fast. After firing two shots, witness left, and after the party had left witness' house witness got his car and he and his wife went to the store, where he was arrested. Witness told them at the store that somebody had tried to rob and kill them. The first time witness knew that he had shot an officer was when one of the party told him, after his arrest, that he had shot an officer. Witness was 45 years old, had a family, and had never been convicted of a criminal offense.

Appellant moved the court to direct a verdict in his favor, which request the court refused, and to which ruling the appellant excepted. The court gave the jury seventeen instructions, to each of which appellant duly objected, and excepted to the ruling of the court in giving same. Instruction No. 10 is as follows: "You are told, gentlemen of the jury, that an attempt to commit any felony upon either the person or property of any person

shall be justification of a homicide. Section 2373 of Crawford & Moses' Digest of the Statutes reads as follows: 'A manifest attempt and endeavor, in a violent, riotous or tumultuous manner, to enter the habitation of another, for the purpose of assaulting or offering personal violence to any person dwelling or being therein, shall be a justification of homicide.' Therefore, you are instructed in this case that if you find from the proof in the case, beyond a reasonable doubt, that the defendant, at the time the shot was fired which wounded the prosecuting witness, actually and honestly believed, without fault or carelessness on his part, that his habitation was about to be entered by somebody attempting to commit a felony, and, so acting and believing, he fired the shot to protect his property from a felon, it would be your duty to acquit him.''

1.   Learned counsel for appellant in their oral argument and printed brief urge first that the court erred in permitting witness Grady Harlan to testify to what appellant's wife said to him after appellant had run back in the house. The purport of the conversation was that, after appellant was ordered to throw up his hands, he ran back in the house, and his wife was in the house and began crying and taking on in there, whereupon Harlan tried to tell them that nobody was there to hurt them, and did tell them. They were both in the house while Harlan was talking, and, when she went into hysterics, he explained to her that he was not going to hurt anybody, but was an officer of the law, whereupon she stated that she had been trying to get the old man to quit that. The court instructed the jury to disregard that testimony only in so far as it might show that the appellant knew that Harlan was an officer and the nature of his business in being at appellant's house. The ruling of the court was not prejudicial to appellant. What was said and done by Harlan and appellant's wife was in the presence of the appellant, and the instruction of the court told the jury that they could consider the testimony only for

the purpose of determining whether appellant knew that Harlan was an officer. What was said and done by Harlan and appellant's wife was immediately preceding the shooting by the appellant and was of the *res gestae.* It was but a part of the surrounding circumstances, and tended to throw light upon the immediate occurrence and to prove that when appellant fired he knew that Harlan was an officer. What the appellant's wife said under the circumstances was not in the nature of testimony against her husband, but what was said and done by her was the same as if it had been said and done by some other person. The court ruled correctly in holding that the testimony of which appellant complains was relevant to the issue involved.

In *Austin* v. *State,* 14 Ark. 555, at page 559, we said: "It is certainly true as a general rule, both in civil and criminal cases, that the evidence must be confined to the point in issue; and in criminal cases there is perhaps a greater necessity, if possible, than in civil proceedings to enforce the rule; but in neither class of cases does this rule exclude all evidence that does not bear directly upon the issue; on the contrary, all evidence is admissible which tends to prove it, and no facts are forbidden to be shown, except such as are incapable of affording any reasonable presumption or inference in elucidation of the matters involved in the issue." See also *Carr* v. *State,* 43 Ark. 99; *Spivey* v. *State,* 114 Ark. 267; *Combs* v. *State,* 163 Ark. 550.

2. Counsel insist in the second place that the court erred in giving that part of instruction No. 10 which reads as follows: "Therefore you are instructed in this case that, if you find from the proof in the case beyond a reasonable doubt that the defendant, at the time the shot was fired which wounded the prosecuting witness, actually and honestly believed, without fault or carelessness on his part, that his habitation was about to be entered by somebody attempting to commit a felony, and, so acting and believing, he fired the shot to protect

his property from a felon, it would be your duty to acquit him." Counsel argued that the instruction as thus phrased placed the burden of proof upon the appellant to establish his innocence beyond a reasonable doubt. We do not so construe the wording of the instruction.

The court, in instruction No. 1, given on its own motion, after defining the issue raised by the indictment and the appellant's plea of not guilty, concluded as follows: "That plea puts in evidence all the material allegations of the indictment and casts upon the State the burden of introducing proof which convinces you beyond a reasonable doubt of the defendant's guilt." The court's instruction No. 3 reads as follows: "The defendant is presumed to be innocent, and this presumption clings to him throughout the entire trial, and is sufficient to acquit him until and unless the State introduces proof which convinces you of the defendant's guilt beyond a reasonable doubt." The instructions must be considered as a whole. Instruction No. 10 did not purport to be, and was not, on the burden of proof. The instruction is not inherently erroneous, and when taken in connection with all the other instructions in the case, as we view it, is not fairly susceptible of the interpretation which counsel for appellant here seeks to give it. If they conceived that the instruction carries the meaning which they now urge upon us, they should have first called the attention of the trial court to the peculiar phraseology of which they here complain. Doubtless, if they had done so, the trial court would readily have changed the wording of the instruction to conform to their views. But their objection in the court below was only a general one, and did not suffice to draw the attention of the court to any objectionable phraseology. *Griffin* v. *State,* 141 Ark. 43; *Jackson* v. *State,* 142 Ark. 96; *Stevens* v. *State,* 143 Ark. 618; *Miller* v. *State,* 160 Ark. 469.

The record presents no reversible error, and the judgment is therefore affirmed.