MARSH *v.* STATE.

Opinion delivered January 26, 1931.

*Trimble, Trimble & McCrary* and *Chas. A. Walls,* for appellant.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant, for appellee.

KIRBY, J. This appeal is prosecuted from a judgment of conviction of appellant for murder in the second degree with a sentence of 8 years in the penitentiary upon an indictment charging him with murder in the first degree for the killing of one Roy Phillips.

The evidence on the part of the State showed that Roy Phillips and one Hartford Harris were on the 5th

day of August, 1930, walking to Beebe from Roy Phillips' home in Lonoke County. On the way Harris suggested that they cut across "these woods," saying that they might find a drink, that he had heard that Charlie Marsh had a loading place in the woods, and they might find something. As Harris and Phillips were walking through the woods in a northwesterly direction, a shot was fired which barely missed Harris. They turned and ran in the opposite direction and five or six more shots were fired. At the last shot Roy exclaimed: "Hart, I'm killed," ran about 30 steps and fell. Harris upon looking around saw appellant Marsh not 50 yards away with a gun in his hand. Harris stated the first two shots were fired rapidly, the others not so quickly, while they were running southeast side by side. When Phillips was hit, witness "angled in close to him," and he took two or three hard gasps and died where he fell. Witness looked back and saw Marsh coming, and said, "As I looked back and saw him, I squatted down by Roy and when I saw he was going to come on up there I raised up before he got there." Marsh came up within 5 or 6 steps. He had a gun which was pointed directly at witness and said: "Who is it?" Witness told him it was Roy Phillips. Marsh put his gun in his pocket and said: "Who done it?" Witness replied: "You are the only man I have seen." Marsh stood around a little bit, walked around to the other side and didn't come near Roy. Marsh stated that he was on the porch with his wife and Finis Bland and Emmett Hammond and heard the shots and came running over. Witness saw Marsh just as Roy fell. It was about 8 or 10 seconds until Marsh came up within 10 or 15 feet of him. Marsh had come from the northwest. Witness later found evidence of three stills in the woods. Witness said he was acquainted with Charlie Marsh and knew where he lived. He saw a still owned by Marsh in operation sometime in November or December of last year, but had not been around his premises since he was there in November or December squirrel

hunting, when Marsh gave him a drink of whiskey. He had not seen a still in operation by Marsh since then.

Appellant testified that he owned a farm of 163 acres in Butler Township, where he had lived since 1903 with the exception of a few months; said on the morning of the shooting, he went to Beebe with Will Marsh, leaving home around 9 or 10 o'clock and returning about 11:30 or a little later, discovered they had lost a sack of shorts, turned around and went back to find it. Coming back he drove his car into the shed, and he and Will Marsh had a cold dinner in the house. He watered some of the stock, and they went down to the lower place to look over the crop, and on the way stopped for a drink of water where the women were washing near the field. They were in the field for some little time, and, upon starting back, the women were leaving from the washing place, and he and Will stopped again and got a drink and started on towards the house. They were something like 300 yards from the house when the shooting and hollering began. Witness ran into the woods where the noises came from and saw Hartford Harris and Roy Phillips lying there and said: "Hartford, what is the matter?" He said "Somebody has killed Roy Phillips." I said: "Who in the world done it?" He said: "I don't know; I haven't seen any one." I said: "Where was he shot at?" and he showed me. Witness did not examine the body at all, couldn't see any breathing, and thought he was dead. Harris said: "Charlie, what will we do?" and I said: "I don't know; I'll go get my car and we'll take him home." He said: "How long will you be gone?" and I said: "Just as quick as I can make it." Witness ran out to the road coming out ahead of Will Marsh, to whom he shouted telling him what had happened. When he reached the house, his wife asked "what had happened" and he told her "that somebody had killed Roy Phillips." She told him not to take the body home yet, but "to get the law." He went on and picked up Luther Gartrell, a justice of the peace, who was teach-

ing in the schoolhouse, and some of the other neighbors near there, and they went to the place where the killing occurred. He said Mr. Gartrell asked Hartford Harris who did it, and Harris replied: "I don't know. I have no idea who did it." Witness denied having a pistol in his hand when he came up to where the boy was lying on the ground, and that he had stated that he was on the front porch of his home when the shooting occurred; explained that, when he had answered Stokes and the other witnesses who testified, he said he was on the front porch at the time of the shooting, that he understood them to be asking, not where he was, but where the others were, and told them that they were on the front porch. He denied that he had given Harris a drink in November last; said he was a member of the school board and had refused to hire Harris as a teacher because some of the parents objected to him, and that Harris was not on speaking terms on account of this and became offended with him when he told him that they had already employed a teacher for the summer.

Several witnesses testified that they had been upon or close by the road at the time when witness Harris and Phillips would have passed by, if they had come as Harris stated they had traveled, and did not see them.

No complaint is made of the instructions, but it is claimed that the court erred in allowing prejudicial remarks made by counsel assisting the prosecuting attorney in the opening of the case and in the closing argument, that incompetent testimony was introduced relative to the operation of the still by appellant in November before the shooting and the ownership of a still found on his premises after the killing in August.

No error was committed by the court in the admission of the testimony tending to prove the operation of the still by appellant, since it tended to show a motive for the shooting that resulted in the death of Roy Phillips. In *Stotts* v. *State*, 170 Ark. 188, 279 S. W. 364, it was said (quoting syllabus): "All evidence is admissible

which tends to prove the issue, and no facts are forbidden to be shown, except such as are incapable of affording any reasonable presumption or inference in elucidation of the matters involved in the issue.''

In *Stone* v. *State,* 162 Ark. 154, 258 S. W. 116, the court recognized the general rule that evidence of a distinct offense is inadmissible to prove another offense, and the exceptions thereto are stated that such testimony was admissible when necessary to fix the intent of the accused or to prove the motive for the offense charged against him, notwithstanding its admission disclosed other offenses for which he might be subject to indictment. It was said there: ''The exceptions to the general rule as to the admission of evidence of collateral crimes, when the evidence of the extraneous crime tends to identify the accused as the perpetrator of the crime charged, or to show the intent with which the defendant committed it, is as well settled as the general rule itself.''

No error was committed in the statement of the case made by the special prosecuting attorney, nor in the closing argument complained of. The statement in the closing argument was made in reply to the argument that the appellant and his family had farmed a goodly number of acres of land well, which would indicate that he was not a bootlegger but a substantial citizen; the attorney saying that the defense had a right to introduce testimony showing whether the defendant's reputation was good or bad, and that the State was without right to attack his reputation unless this was done. Upon objection the court told the jury that a person's reputation is presumed good until proved otherwise; that in his opinion only the defense could bring his good reputation in issue, but that was not an issue in the case, and the court stated he only permitted the argument in answer to what had been said by the attorney for the defense; and that the jury are to be governed by the testimony and law in the case. *Lentz* v. *State,* 169 Ark. 31, 272 S. W. 847.

Neither was error committed in the argument that defendant was in possession of the land where the still and mash were found. The court, upon objection to the testimony, told the jury that the fact that the land was not fenced did not necessarily exclude the defendant's being in possession of it, the defendant having denied that he was in possession, but other witnesses testified that he used it as a pasture at the time of the killing, leaving it a question for the jury to decide.

If the statement of Hartford Harris, the only witness to the killing, was true, and the jury evidently believed it was, as they had the right to do, the appellant intentionally and wantonly fired at these boys crossing the wooded lands in front of his house without provocation or any necessity for protecting himself or his property at the time, unnecessarily killing the decedent, Roy Phillips, without justification or excuse. The evidence would have supported a verdict of conviction of the higher offense, and the case was submitted to the jury on correct instructions. After a careful examination of the record, it is found to be free from prejudicial error, and the judgment is accordingly affirmed.