This appeal is prosecuted from a judgment of conviction of the crime of murder in the first degree, with punishment fixed at death in the electric chair.
It appears that Mark H. Shank, who was a practicing attorney in Akron, Ohio, was in some way connected with Alvin Colley, and at the time was retained to defend a cause of action against one Kenneth Braucher on a note for $275. Braucher at the trial introduced a certain receipt purporting to have been signed by Kaufman, who was dead, and it afterward appeared that said receipt was a forgery, and Braucher was arrested on the last day of the trial. The prosecuting attorney, Mr. Crutchfield, had possession of the receipt, together with other documents, and the same were stolen from his office, and Alvin Colley was suspected of having burglarized the prosecuting attorney's office, and Shank was thought to have been connected with the occurrence.
Colley fled from Akron, Ohio, and, after being about the country, finally reached Hot Springs some time in August, and appellant, learning that Colley was in Hot Springs, left Akron Friday night, August 11, 1933, to go to Hot Springs. Before leaving he purchased from the Kenmore, Ohio, drug store more than forty grains of strychnine. On arriving at Hot Springs, Arkansas, he found Colley at a rooming house and spent the night there, and the next morning, Monday, he went with Colley to Malvern to ascertain if he could procure employment for him at the shoe factory. Leaving Malvern, they proceeded to Little Rock, where they stayed at a tourist camp, and on Tuesday morning they left to return to Hot Springs. The appellant, in company with Colley and his family consisting of a wife and three children, boys, passed through Benton and bought some food. Shank had purchased some grape juice, of which about one-third of the gallon was left at the time of the purchase of the food. The party then proceeded from Benton on highway No. 67 toward Malvern, and, after reaching a point about 8 or 10 miles from Benton, they decided to have lunch. While Mrs. Colley was spreading the lunch, Shank took the grape juice and filled five paper *Page 246 
cups with same and put strychnine in each of said cups. Appellant used a coffee cup and gave a paper cup containing strychnine to each member of the Colley family, and they all drank it. Soon some of the children became in, and the party immediately got into the car and started toward Malvern.
After they had proceeded some distance on the Malvern road, appellant jumped out of the car, leaving his belongings therein, and ran out through the woods. Colley was driving, and when he became unconscious, the car left the road and ran into a fence. Parties came up and investigated and found Colley and other members of the family dead. Those that were still alive were taken to the hospital at Malvern, where all members of the family died, as a result of the poison, except the youngest boy about four years old.
Officers appeared and brought blood hounds from Hot Springs, and appellant was apprehended about two or two and a half miles from where the car collided with the fence. He was taken to Malvern to the undertaking parlor, where he admitted knowing these parties and that he was with them at the time they became in, and he took the officers to the spot where they had had lunch. There the officers found the paper cups, plates and parcels of food.
Appellant then was returned to Malvern, and from there to Hot Springs, reaching there about nine o'clock, and making a confession about three A.M. the next morning as reflected in this statement.
Appellant's contention through his counsel (they being unable to obtain any reliable information from him) is that he did not make a voluntary confession, and, if so, that he was at the time incapable of doing so from mental derangement. It being further contended that he did not commit the act as alleged in the indictment, and, if he did, he was under such defect of reason from disease of mind as:
(1). Not to know the nature and quality of the act he was doing, and
(2). If he knew it, he did not know he was doing wrong, and *Page 247 
(3). If he knew the nature and quality of the act, and knew it was wrong, he was under such duress of mental disease as to be unable to choose between right and wrong as to the act done, and unable, because of the disease, to resist the doing of a wrong act, which act was the result solely of his mental disease.
It was the further contention of appellant that he was not connected in any way with the theft and burglarizing of the prosecuting attorney's office in Akron, Ohio, but, if he did commit the act and make the confession he was being implicated in burglarizing the office of the prosecuting attorney, that he was laboring under an insane delusion which caused him to think he was being connected with it, and for that reason he was incapable of understanding the nature of the act he committed. The appellant was, and had been for some time, suffering from a mental disease which was hereditary, and for that reason was incapable of committing a crime, and was not guilty in this case.
Certain instructions were objected to as erroneous, and it is insisted also that incompetent testimony was allowed to be introduced and certain competent testimony wrongfully excluded.
The jury returned a verdict of guilty of murder in the first degree, and from the judgment thereon this appeal comes.
(after stating the facts). There are eighty-three assignments of error in the motion for a new trial, many of which are unimportant, and we only notice such as are insisted upon by appellant.
First, it is insisted that the trial court erred in calling jurors who had been summoned to serve on a previous case after the regular panel had been exhausted, it being claimed that the prospective jurors should have been summoned from the bystanders in accordance with the statute, 3154, Crawford Moses' Digest. Accused person has no right to the services of a particular *Page 248 
juror but only to a trial before a fair and impartial jury. The trial court has wide discretion in summoning special veniremen, and the fact that these particular eight jurors had been summoned before the appellant's trial began did not constitute error. Pate v. State, 152 Ark. 553, 239 S.W. 27; Sullivan v. State, 163 Ark. 11, 258 S.W. 643.
It is next insisted that the examination of the juror, J. R. Haynes, disclosed that he was incompetent, having answered the question: "Q. Would the fact that he is charged with this sort of crime have any effect on you? A. It would to some extent." The record of this juror's examination on his voir dire showed that he stated several times that he could and would go into the jury box with an open mind and free from prejudice and try the case solely upon the evidence and the law. The fact that the juror might have been prejudiced against the particular type of crime of which appellant stood charged did not in itself disqualify him. Tong v. State, 169 Ark. 708,276 S.W. 1004; Cabe v. State, 182 Ark. 49, 30 S.W.2d 855.
The assignment that error was committed in admitting portions of depositions of certain witnesses, naming them, taken in Ohio on appellant's behalf, is without merit. The depositions were introduced by appellant, and the court was not asked at the time to rule upon their admissibility. It is true that at the beginning of the trial appellant asked the court to rule on the admissibility of certain of the depositions after they were introduced, and the court refused to do so at the time. During the course of the trial appellant introduced the depositions in full without asking for any further ruling and without any being made. There must, however, be a ruling of the court and an objection before error can be predicated. Howell v. State, 180 Ark. 241, 22 S.W.2d 47.
It is next urged that it was error to permit Dr. Hodges to testify concerning the condition of the little boy whose life was saved. The doctor testified that the boy had been poisoned with strychnine about the same time and place as the others, and described the symptoms; and it was competent to show that he had been poisoned at the same time and place as the others as merely a part of one *Page 249 
transaction. Banks v. State, 187 Ark. 962, 63 S.W.2d 518.
It is urged that the admission of the testimony of Mrs. Elsie Fox constituted error. No objection was made to her direct examination. It developed, however, on cross-examination that her testimony was largely hearsay, and the court, at the request of appellant, instructed the jury not to consider that part of her testimony which was hearsay. The appellant had brought out part of the incompetent testimony and made no objection to that part elicited by the State. His motion to exclude that part of the testimony was addressed to the discretion of the court, and there was no abuse of discretion in the ruling thereon. Bell v. State, 120 Ark. 530, syllabus 12, 180 S.W. 186.
Neither was it error to allow the witness, Crutchfield, to answer the question asked by the prosecution as to whether or not he had information that appellant was implicated in the theft of certain papers from his office. Crutchfield was the prosecuting attorney of Wayne County, Ohio; and appellant stated in his confession that he was being implicated in that theft; and the State was contending that the implication of appellant in the crime in Ohio was the moving cause or factor in appellant's trip to Arkansas, and the poisoning of the Colley family. It was only asked for the purpose of affording an explanation as to why an official was following a certain line of investigation and is admissible both as such and as tending to show a motive for the homicide. Turner v. State,155 Ark. 443, 277 S.W. 727; Sexton v. State, 155 Ark. 441,244 S.W. 710; March v. State, 183 Ark. 1, 34 S.W.2d 767.
Neither was error committed in refusing to allow the witness, Dr. Brown, to answer the question giving an explanation that appellant was suffering with such mental disease as rendered him irresponsible. The question was not a proper one to ask an expert witness. Underhill on Criminal Evidence, 3 ed., 267-68. Neither was it necessary that the question asked this witness by the prosecuting attorney on cross-examination contain all the undisputed *Page 250 
facts essential to the issue.* Underhill on Criminal Evidence, (3 ed.) 191.
No error was committed in allowing the witness, Joe Wakelin, to testify relative to a conversation with Dr. Echols, an expert witness, who had detailed his examination of appellant upon which he based an opinion that he was insane. It appears that Dr. Echols had been asked concerning this conversation with Wakelin, and he testified that appellant was insane. Wakelin's testimony was competent to show that the doctor had made a previous contradictory statement indicating that he thought appellant was sane. Floyd v. State, 181 Ark. 185, 25 S.W.2d 766.
No error was committed in overruling appellant's motion for a continuance on account of the absence of two witnesses whose testimony it was alleged was essential to a proper defense of the cause. The names of the witnesses were not set out in the motion, and it was not indicated how or when their attendance might be procured and they were to be used as nonexpert witnesses concerning appellant's insanity. Such evidence was merely cumulative to the evidence already offered, conceding that the witnesses would testify as set out in the motion. The motion however, was not in statutory fob it not being stated therein that appellant believed the testimony of the absent witnesses to be true. Sections 1220 and 3130, Crawford Moses' Digest; Estes v. State,180 Ark. 656, 22 S.W.2d 172; Weaver v. State, 185 Ark. 147, *Page 251 46 S.W.2d 37; Lynch v. State, 188 Ark. 831, 67 S.W.2d 1011.
It is urged that the court erred in giving instructions numbered 11, 11 1/2 and 12, it being claimed there was no evidence in the record to support same. There is evidence in the record to support these instructions found in appellant's confession; and they are correct declarations of law. Bell v. State, 120 Ark. 530, at page 555,180 S.W. 186. Instruction No. 13, objected to, is also a correct declaration of law. Id. page 553. Instruction No. 14, complained of, was not erroneous, the jury having the right to consider appellant's actions before and after the crime and his appearance at the trial in determining his sanity, that question being before the jury. Underhill on Criminal Evidence, 3 ed., 261-62. Appellant's requested instruction No. 13 was properly refused. Payne v. State, 177 Ark. 413, 6 S.W.2d 832; Wawak and Vaught v. State, 170 Ark. 329, 279 S.W. 997.
Appellant's requested instruction No. 16, relative to the weight to be given the testimony of the officers testifying, was fully covered by instruction No. 22, given; and the credibility of particular witnesses and the weight to be given their testimony should not be emphasized in separate instructions, any way. Nichols v. State, 182 Ark. 309,31 S.W.2d 527. Both instructions No. 16 and No. 22 should have been refused; and instruction No. 17 was fully covered by instructions No. 12 and No. 20, given, all of which should have been refused for the same reason as assigned for the refusal to give appellant's requested instruction No. 13 already discussed. Appellant's requested instruction No. 17B was fully covered by instructions No. 15 and No. 19, given. No error was committed herein under the familiar rule that instructions should be considered as a whole, and that the trial court is not required to repeat instructions.
It is finally insisted that certain remarks of the prosecuting attorney herein constituted error. The prosecuting attorney in his argument said: "He is guilty. I know it, and you know it, and the defendant knows it." The cases of Hughes v. State, 154 Ark. 621, 243 S.W. 70, and *Page 252 
Sanders v. State, 175 Ark. 61, 296 S.W. 70, are cited in support of this contention. These cases are sharply differentiated from the present case, the Hughes case being reversed because of the statement of the prosecuting attorney that he knew that the defendant was guilty because he had information that no one else had; and the Sanders case was reversed for the same reason. No inference of the kind can be drawn from the statement of the prosecuting attorney herein complained of. He also said directly to the jury that he based his opinion upon the evidence introduced in the trial, and told them that they had the same opportunity as he had to reach the conclusion, and, if he had reached the wrong conclusion, they could disregard it. He was not concealing anything from the jury or indicating that he had any knowledge or evidence in the case which was not before them. The expression of an opinion by a prosecuting attorney on the evidence does not constitute a reversible error. McGraw v. State, 184 Ark. 342, 42 S.W.2d 373.
Objection was made to the introduction of appellant's confession on the ground that it was not freely and voluntarily made. No exceptions were saved to the ruling on this question, nor was it made a ground in the motion for a new trial. The question of its admissibility, however, was properly raised in the lower court, and it must be considered here without regard to whether exceptions were saved to its introduction and the ruling thereon. Harding v. State, 94 Ark. 65, 126 S.W. 90. The confession was introduced during the examination of Congressman D. D. Glover, who, together with witnesses Wakelin, Rucker and Buckalew, testified that the confession was made of appellant's own free will and accord, that it was entirely voluntary and made without any threats, intimidation or hope of reward. There is, in fact, no conflict in the evidence as to whether the statement was voluntarily made, and it was properly admitted over appellant's objection. Allen v. State, 175 Ark. 264, 298 S.W. 933.
The evidence in this case is conclusive that appellant administered poison to the Colley family in Saline County, Arkansas, on the 15th day of August, 1933, which act *Page 253 
caused the death of Alvin Colley, his wife and two of his children. Much testimony was introduced on appellant's part tending to show his insanity; but evidence was introduced on the part of the State tending to prove his sanity; and the question was settled by the jury upon substantial evidence, and their finding cannot be disturbed on appeal.
There are many other assignments of error which are not considered here, as reversible error could not be predicated upon any of them. The issues appear to have been fully and fairly presented to the court and appellant to have received a fair and impartial trial. We find no reversible errors in the record, and the judgment is affirmed.
* "The question asked Dr. Brown, which the court refused to allow him to answer was as follows: Q. "From your examination of the defendant, your observation, the history of the case and hearing all the testimony you have heard in this case relative to the insanity of the defendant, and from your experience, is it your opinion that the defendant was suffering with such mental disease as to render him irresponsible?" On cross-examination Dr. Brown was asked: Q. "Is it true, if it is true, that Mr. Shank, before he left Ohio, was being implicated in some robbery or some crime, and he came down here and administered poison because of that fact, if that is the testimony, and if that is true, he was not suffering under an insane delusion, was he?" He answered: "That would be a fact, and not a delusion." (Rep.)