## Jimmy SPIVEY and Freddie C. PAYNE *v.*
## The STATE of Arkansas

5445                                    447 S. W. 2d 846

Opinion delivered December 8, 1969

[Rehearing denied January 12, 1970.]

*W. B. Howard* and *Jack Segars,* for appellants.

*Joe Purcell,* Attorney General; *Don Langston* and *Mike Wilson,* Asst. Attys. Gen., for appellee.

Lyle Brown, Justice. Jimmy Spivey and Freddie C. Payne appeal from a conviction on two counts of burglary and grand larceny. In the first burglary they were charged with taking a television set and a rifle; in the second charge they allegedly took an adding machine and a rifle. On appeal they attack the testimony of two of the State's witnesses as being incompetent and prejudicial. The only evidence abstracted is the testimony of those two witnesses, W. V. Vincent and Sarah Kay Meredith.

*The Testimony of W. V. Vincent.* He attended an

auction sale at which the defendants were present; Spivey turned in an adding machine to be auctioned off and the witness bought it; Spivey inquired of Vincent if he ever bought guns, to which Vincent replied in the affirmative; subsequently Spivey made a date by telephone with Vincent; and at the appointed time Spivey brought a pistol and seven rifles to Vincent's home. At that point in Vincent's testimony this colloquy occurred:

Mr. McCourtney: If the court please, we want to object to this line of questioning and answers about these guns, unless it can be shown that they are guns connected with the burglaries of Mr. Ball and Mr. Barnett, which are contained in these charges.

The Court: The objection is overruled.

Mr. McCourtney: Note our exception.

Prosecuting Attorney: You did buy the eight guns?

A. On Monday morning, yes, sir. I did buy the guns.

Q. Do you have the guns now?

A. No, sir.

Q. Were they taken by persons that identified them as their owner?

Mr. McCourtney: We object to that all.

Prosecuting Attorney: We withdraw the questions.

The Court: The jury will disregard it.

Appellants hinge their first point for reversal on that part of the record just cited. They contend that the

court should not have permitted Vincent's testimony with reference to his having purchased eight guns to be continued after the first objection; they say the clear import of the testimony is that all the guns were stolen. The effect of the testimony, say the appellants, was to connect them in the minds of the jury with other alleged offenses.

In addition to the abbreviated abstract we have searched the record and we are unable to find where the State ever established that any of the guns involved in the Vincent transaction came from the homes of the prosecuting witnesses; in fact it is fairly clear that they came from other sources.

The line of questioning was for the apparent purpose of establishing that the defendants, a short time after the alleged offenses, had in their possession a quantity of guns thought to have been stolen from persons other than the prosecuting witnesses. Since counsel for the defendants specifically and timely objected to the line of questions and saved exceptions, we are concerned with whether the testimony was admissible. The guns sold to Vincent had no connection with the larceny charges under prosecution. Proof of their possession was not relevant to show intent. If the defendants entered the homes of the prosecuting witnesses and took property therefrom, no further enlightenment on intent was necessary. *Searcy* v. *State,* 245 Ark. 159, 431 S. W. 2d 477 (1968); *Alford* v. *State,* 223 Ark. 330, 266 S. W. 2d 804 (1954).

True it is that after the second objection the prosecuting attorney withdrew the questions and the trial judge told the jury to "disregard it." But the damage was already done. If the trial court had sustained the first objection the jury would never have heard the prejudicial testimony we have recounted.

*The Testimony of Sarah Kay Meredith.* The al-

leged burglaries occurred in two rural communities near McCrory. In his defense Freddie Payne testified that he had never been in the McCrory area except on one occasion when he was driving nonstop to Hot Springs. To rebut that testimony the State produced Sarah Kay Meredith. She worked at a cafe in McCrory and identified Payne as having patronized the cafe one day late in February or early March. (The burglaries were committed on February 27.) On direct examination she testified that the sheriff came to see her about one week after Payne was in the cafe; that he brought some pictures and she identified one as being that of Payne.

We do not agree with appellants that Sarah Kay Meredith's extrajudicial identification was inadmissible. There are three cases which we think hold contrary to appellants' contention:

*Birones* v. *State,* 105 Ark. 82, 150 S. W. 416 (1912). Pursuant to a plan of the officers, the prosecuting witness went to the police station a few days after the offense; Birones was brought into the room and she recognized him. The testimony of the prosecuting witness to that effect on direct examination was upheld. "It was entirely competent for her to state how often she had seen the defendant before and after the commission of the crime, and whether she recognized him or not." This court specifically pointed out that the ruling did not conflict with *Warren* v. *State,* 103 Ark. 165, 146 S. W. 477 (1912);

*French* v. *State,* 231 Ark. 677, 331 S. W. 2d 863 (1960). The prosecuting witness testified for the State in chief that he went to the police station some ten days after the crime and identified French in a lineup. The defendant objected to the witness being asked if he identified the defendant and to the affirmative answer. We said it was proper to state when and where he identified the defendant;

*Bishop* v. *State,* 236 Ark. 12, 364 S. W. 2d 676 (1963). The day following the alleged rape the prosecuting witness went to the jail and identified the defendant. Her testimony on direct examination to that effect was approved.

Among the five cases cited by appellants for rejection of the Meredith identification are three which, at first blush, appear to support their theory, particularly if emphasis is placed on some of the general pronouncements. Those cases are: *Warren* v. *State, supra; Trimble & Williams* v. *State,* 227 Ark. 867, 302 S. W. 2d 83 (1957); and *Hicks* v. *State,* 231 Ark. 52, 328 S. W. 2d 265 (1959). We think those holdings should be interpreted in light of the particular fact situations upon the reversals hinged. The *Warren* case was reversed because two officers were permitted to testify in chief that they saw the prosecuting witness identify Warren in a lineup. That same fact situation was the basis of the reversals in *Trimble* and in *Hicks.*

When courts are divided on an issue, as they are in this instance, it is not difficult to find persuasive arguments on both sides. The division is reflected in an annotation in 71 A. L. R. 2d 449. Also, see Wharton's Criminal Evidence, Vol. 1, 12 Ed., § 181.1 (Supp. 1969) Many safeguards are today in effect to protect the accused in his due process rights pertaining to pretrial identification; *cf. Simmons* v. *United States,* 390 U. S. 377 (1968); *United States* v. *Wade,* 388 U. S. 218 (1967); and *McClain* v. *State,* 247 Ark. 33, 444 S. W. 2d 99 (1969). In light of those safeguards and the persuasive arguments supporting our own precedent we are unwilling to adopt a different rule than that which is supported by *Birones, Bishop,* and *French.* (We should mention in passing that the defendants here did not seek an in-chambers hearing as was utilized in *McClain* v. *State.*)

For the error in admitting Vincent's testimony relative to the eight guns, the case is reversed.

BYRD, J., concurs.