Jerry Hardy McCROSKEY *v.* STATE of Arkansas

CR 80-151

608 S.W. 2d 7

Supreme Court of Arkansas

Opinion delivered November 24, 1980

*E. Alvin Schay*, State Appellate Defender, by: *Jack Kearney*, Deputy Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *James F. Dowden*, Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Chief Justice. This is the second appeal in this case. The first appeal was assigned to the Court of Appeals pursuant to Rule 29 (3) of the Rules of the Supreme Court and Court of Appeals. The judgment of conviction was reversed because of the admission of the confession of a co-defendant and because of statements of the prosecuting attorney in closing argument focusing attention upon the fact that appellant had failed to take the witness stand. Appellant was again tried on the charge of aggravated robbery, found guilty and sentenced, as a habitual criminal, to 30 years imprisonment. He asserts on this appeal that the trial court erred by admitting into evidence testimony regarding pretrial identifications of appellant and in allowing an improper in-court identification. Appellant also contends that

the judgment should be reversed because of improper comments by the prosecuting attorney during closing arguments.

As we understand appellant's argument as to the in-court identification, he is contending that the trial judge never ruled that it was admissible as independently reliable and that there is no evidence to show its reliability. Appellant's argument is focused for the most part, on the testimony of Joyce Laurell, an employee of Kentucky Fried Chicken at 7620 Cantrell Road, where the robbery was alleged to have occurred. She testified that at about 5:30 p.m. on August 12, 1978, a man entered the kitchen, where she was, through a swinging door, walked past her into the office area, looked into the office and then walked back to her. She said that this man addressed her, stood close to her, and asked her, in a low voice, if she could open the safe. She said that this man was white, tall and slender and that he wore a gray felt hat with a little feather in it and tinted, wire-rimmed sunglasses. Miss Laurell testified that, when she told this man she could not open the safe, he told her to get the money in the cash register, so she went to the register, "pulled the twenty" activating an alarm (which calls the police but is silent in place of business), removed the money in the register, returned to the kitchen, put the money in a bag and walked back to the office where the man was standing near the safe. She pointed to the defendant as that man. She said that, after she unsuccessfully tried to open the safe at the instruction of this man, he took the bag containing the money and told her he was leaving through the back door and that she should not follow him. She stated that she was positive that the defendant was the man who came into the place of business, intimidated her with a weapon (which she did not see) and took the money and that there was no question in her mind. She estimated that the time lapse between the white male's coming into the kitchen and his leaving was 10 or 15 minutes.

On cross-examination she testified that she had written out a statement about the occurrence at the request of the police officers who had responded to the alarm 10 or 15 minutes after the robber had left, but had failed to include in it a description of the robber. She was unable to explain why she had not included a description but said that she knew the

defendant was the man. She also admitted that when she gave a statement 13 days later, she again failed to include a description of the robber.

Appellant's attorney then pursued a line of cross-examination emphasizing the elapsed time between the occurrence and the trial as a year and a half, or 455 days, and that Miss Laurell was identifying appellant on what she saw at the time of the occurrence. She admitted that she had been unable to identify a black male with whom she said she saw appellant leave the premises, although she had seen this man in the front part of the place of business when she went to the cash register and had engaged in conversation with him. She denied that the deputy prosecuting attorney had, earlier in the day, told her that the defendant would be sitting in court that day.

On redirect examination, the witness stated that defense counsel had asked her if she had previously testified under oath in court about this matter and she had said that she had. It was also brought out that she and the other employees present had given a description of the robber to the police officers after they had responded to the alarm and that the officers had written a description from these statements. She confirmed the description, basically, as: white male, 21 years old, six feet two inches, 145 pounds, dark hair, brown eyes; hat, gray felt; shirt, white and blue jeans.

A hearing at the bench was then conducted. The deputy prosecuting attorney said that, since defense counsel had questioned the ability of the witness to identify the robber after 455 days, he wanted to go into prior identifications, one of which was in a lineup 13 days after the robbery. The trial judge ruled that the witness might be asked if she had identified appellant at the time she gave her statement to the police 13 days after the incident. He would not, at that time, permit any inquiry pertaining to her identification of appellant at the previous trial. Thereafter, Miss Laurell testified, over appellant's objection, that she had been able to identify McCroskey when she gave her second statement, that she was then certain that he was the man who robbed

her, that she was still certain that he was, and that there was no doubt in her mind about the matter.

Later, an in camera hearing was held. The deputy prosecuting attorney insisted upon producing evidence that Joyce Laurell picked appellant as the robber from a fair lineup and that other employees who had testified picked appellant as the robber from photo spreads that were not suggestive. That hearing was a prolonged argument about the admissibility of testimony relating to previous identifications of appellant by witnesses who were at the place of business at the time of the robbery. We are unable to find any request by appellant during these hearings, out of the hearing of the jury, that the trial court exclude the in-court identifications. Yet appellant now argues that these were inadmissible and that, in the absence of a specific finding by the trial judge, the in-court identification of appellant was not admissible. We find no objection to the admissibility of these identifications during the trial in appellant's abstract of the record. Although appellant did file a pretrial motion to suppress in-court identifications, it was never called up for hearing and appellant announced that he was ready for trial wihtout its having been heard. A bench-side statement by the prosecuting attorney that it had been withdrawn by appellant was never controverted. It is sufficient to say that appellant's contention in this respect is totally without merit. The question is raised for the first time on appeal, so we will not consider it further, except to say that the authorities cited by appellant do not support his argument. Actually, we· have held that an in-court identification can be held inadmissible as a matter of law only if, after viewing the totality of the circumstances, it can be said that the identification was patently unreliable. *Mayes* v. *State*, 264 Ark. 283, 571 S.W. 2d 420. We find none of the in-court identification was patently unreliable. Furthermore, the only suggestion that the in-court identifications were tainted by pretrial procedures is the cross-examination pertaining to the possibility of a suggestion by the deputy prosecuting attorney that the person would be in the courtroom. This was denied and no showing was made that it had occurred.

Each of the witnesses who was present during the

robbery was cross-examined extensively along the lines pursued in cross-examination of Miss Laurell about the reliability of his in-court identification. Each of them was positive and unwavering in identifying appellant. Some of the witnesses, testifying after the in camera hearing, were permitted, over appellant's objection, to state that they had seen the defendant, whom they had identified after the robbery but before the second trial, were then able to recognize him as the robber, and had been positive in their identification of him, but were identifying appellant upon the basis of having seen him in August, 1978.

The tactics of defense counsel were appropriate. He was seeking to discredit the identification testimony of the witnesses, and to, at least, raise a reasonable possibility of mistake by reason of the lapse of time between their observation of the robber and the trial. It has been said that reliability is the linchpin in determining the admissibility of identification testimony (*Lindsey* v. *State*, 264 Ark. 430, 572 S.W. 2d 145); however, reliability of eyewitness identification is a question for the jury (as appellant's trial counsel recognized), unless procedures leading to the identification are so defective as to undermine its reliability in which case the identification is inadmissible as a matter of law. *Synoground* v. *State*, 260 Ark. 756, 543 S.W. 2d 953. It was not shown that the in-court identifications were so tainted.

The evidence as to prior identifications was perhaps more restricted than necessary, particularly in view of the serious attack upon the reliability of the in-court identifications by cross-examination. We have held that an eyewitness to an offense may testify that he saw or identified an accused after the offense was committed. *Cromwell* v. *State*, 269 Ark. 104, 598 S.W. 2d 733; *Bishop* v. *State*, 236 Ark. 12, 364 S.W. 2d 676; *Spivey* v. *State*, 247 Ark. 752, 447 S.W. 2d 846. In *Birones* v. *State*, 105 Ark. 82, 150 S.W. 416, we held that it was competent for the victim of a crime to state how often she had seen the defendant before and after the commission of a crime and whether she recognized him. Recently we held that where, as here, the victim of a crime had been extensively cross-examined about an in-court identification of the accused and the description given to the police by the

witness, the subject of prior identification is thereby opened up, and testimony by that witness as to a previous identification is not prejudicial error. *White* v. *State*, 270 Ark. 487, 605 S.W. 2d 11 (1980).

It is noteworthy that evidence of an out-of-court identification, formerly excluded as hearsay is not always hearsay and is admissible, over a hearsay objection when, as here, the witness making the identification testified and is subject to cross-examination at the trial. Ark. Stat. Ann. § 28-1001, Rule 801 (d) (1) (Repl. 1979). There was an implication of recent fabrication in appellant's cross-examination of Miss Laurell, relating to conversation with the prosecuting attorney about appellant's presence in the courtroom. Her previous identification of appellant was admissible as a prior consistent statement to rebut that charge. Ark. Stat. Ann. § 28-1001, Rule 801 (d) (1) (ii) (Repl. 1979). We find no error in connection with the admission of identification testimony.

Appellant complains of the following comments in the closing argument of the deputy prosecuting attorney:

> If that's all you did was go straight to the robbery and then bring a witness into court and say, "Do you see this man sitting at the table or do you see the defendant in the courtroom" you know, and kind of point at him, well, that wouldn't be fair. But, if anything unfair was done, did Mr. Simpson ask about it? No, you can be assured that the identification in this case is a fair one and it is based on the knowledge of the witnesses.

We simply do not understand appellant's objections. The trial court properly ruled that "this is argument." The prosecutor was free to argue any inference reasonably and legitimately deducible from the evidence. *Willis* v. *State*, 220 Ark. 965, 251 S.W. 2d 816. The trial court has a wide latitude of discretion in controlling the arguments of counsel and its rulings in that regard will not be overturned on appeal in the absence of clear abuse. *Perry* v. *State*, 255 Ark. 378, 500 S.W. 2d 387. We find no abuse of discretion in this instance.

Appellant also contends that there is reversible error in the sentencing phase of the bifurcated trial when the trial court overruled appellant's objection that the prosecuting attorney improperly commented upon appellant's failure to take the witness stand by the following remarks during his argument to the jury:

Normally, the ones of you who have served before know that a person, when he takes the stand, his prior criminal record comes up and that usually is the only time it comes up. But this is a little different situation.

When you get a person charged as being an habitual criminal under the habitual criminal statute, after the jury has found him guilty, then they are allowed to hear his prior record.

The guilt of defendant had already been determined by the jury. The only thing that remained for its consideration was the punishment. The deputy prosecuting attorney was merely explaining to the jury that it had heard about the criminal record of the defendant and that this was different from the usual procedure.

Appellant relies upon *Chapman* v. *California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, 24 ALR 3d 1065 (1967), and *Adams* v. *State*, 263 Ark. 536, 566 S.W. 2d 387. *Adams* was premised upon the fact that the jury could have surmised from the prosecuting attorney's remarks that the defendant's failure to testify was an admission of guilt, and that the remarks might have contributed to the conviction of the defendant in that case. The remarks here could not possibly have influenced the jury in convicting the defendant and there was no basis for surmising that appellant admitted guilt. Even the prior convictions were stipulated, and, as the judge remarked, without any inference that appellant could offer any rebuttal to that evidence.

In *Chapman*, the state's attorney filed his argument to the jury from beginning to end with numerous references to the silence of the defendants and inferences of their guilt resulting therefrom. The trial judge instructed the jury that it

could draw adverse inferences from their failure to testify. It was pointed out in the opinion that the case was such that, in the absence of the prosecutor's comments, honest, fair-minded jurors might very well have brought in not guilty verdicts. For that reason, the United States Supreme Court concluded that the constitutional error could not be considered harmless. This case bears no resemblance to *Chapman*. The statement of the prosecuting attorney here is not of the nature of those in *Chapman*. Appellant's guilt had already been determined and no honest, fair-minded jury could have found that he did not have the stipulated prior convictions.

It would have been better if the prosecuting attorney had left procedural explanations to the trial judge, but even if we found that there was error in his remarks, we can say with assurance that, in this case, it was harmless beyond a reasonable doubt.

The judgment is affirmed.