James Fenton MAYS *v.* STATE of Arkansas

CR 90-120 798 S.W.2d 75

Supreme Court of Arkansas
Opinion delivered November 5, 1990

*Robert S. Blatt*, by: *William J. Kropp III*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. On October 9, 1989, the appellant, James Felton Mays, was convicted of delivery of cocaine and sentenced to forty years in the Arkansas Department of Correction. Mays filed a timely letter with the trial court alleging ineffective assistance of counsel at trial. A new counsel was appointed for Mays, and a hearing was held on November 15, 1989. *See* Ark. R. Crim. P. 36.4.

Mays's allegations were treated as a motion for new trial, which was subsequently denied. Mays now asserts three points of error on appeal: 1) that the trial court erred in its decision that he had been rendered effective assistance of counsel at trial level, 2) he was denied due process and effective assistance by new counsel at the hearing on the motion for new trial, and 3) the trial court's response to a remark made by the prosecuting attorney during closing argument constitutes reversible error.

Mays's arguments are without merit, and we affirm.

Mays initially asserts that the trial court erred in its decision that he had been rendered effective assistance of counsel at trial for two reasons: 1) the failure of his counsel to call a witness, and 2) the failure of his counsel to adequately object and request an admonition to the jury during the State's closing argument.

We first note that it is a defendant's burden to prove ineffective assistance of counsel, and it is a heavy burden because counsel is presumed effective. *Hicks* v. *State*, 289 Ark. 83, 709 S.W.2d 87 (1986) (citing *Rightmire* v. *State*, 275 Ark. 24, 627 S.W.2d 10 (1982)). Additionally, we have adopted the standard for ineffective assistance of counsel as established by the United States Supreme Court in *Strickland* v. *Washington*, 466 U.S. 668 (1984), as follows:

> To prevail on a claim of ineffective assistance of counsel, the petitioner must show first that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the sixth amend-

ment. Second, the petitioner must show that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must show there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting doubt respecting guilt, i.e., the decision reached would have been different absent the errors. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. In making a determination on a claim of ineffectiveness, the totality of the evidence before the judge or jury must be considered. *Sutherland* v. *State*, 299 Ark. 86, 771 S.W.2d 264 (1989) (citing *Strickland* v. *Washington, supra*).

■ Further, it is also well settled that the decision to call certain witnesses and reject other potential witnesses is largely a matter of trial strategy and that counsel must use his own best judgment to determine which witnesses will be beneficial to his client. *Tackett* v. *State*, 284 Ark. 211, 680 S.W.2d 696 (1984).

Mays fails in showing both that his counsel's performance was deficient and that he was prejudiced as a result. Detective Donald Howard, an undercover narcotics officer with the Fort Smith Police Department, testified that he and a confidential informant went to the Taco Bell in Forth Smith and met two men, the Hays brothers, for the purpose of attempting to purchase a rock of crack cocaine. The Hays brothers talked with Howard and the informant to satisfy themselves that they were not police and then left. They returned with a black male and a female, both of whom got into Detective Howard's car. The couple was introduced as James and Linda, and they directed Howard to two places to procure the rock of crack cocaine. Mays was in the car with Howard for at least 45 minutes while they located the rock cocaine. Detective Howard later identified James Mays as the person to whom he had given $50.00 in exchange for a rock of crack cocaine.

Mays called on behalf of his defense one of the Hays brothers, who testified that Mays was not the man he and his brother had taken to the Taco Bell. Mays asserts that his attorney should also have called Guy Barnes as a witness in his defense.

Mays informed his attorney on the morning of trial that Barnes had been recently arrested and had admitted to him in jail the night before that he was the one who was responsible for this undercover buy. Barnes was in the building to be arraigned that morning, and Mays's attorney arranged to have Detective Howard view Barnes before trial to assess the potential of misidentification of Mays by Detective Howard. Upon seeing Barnes, however, Detective Howard identified Barnes by name from prior association and announced that he was not the man who had sold him the rock of crack cocaine.

Further, during lunch recess, Mays's attorney interviewed Barnes. Barnes did not admit that he had delivered the cocaine, but did admit that he had been there and knew who had made the delivery. He wouldn't identify the person, but stated that Mays was not involved; additionally, he informed Mays's attorney that if he was questioned, during trial, concerning the identity of the person who made the delivery, he would invoke the fifth amendment and refuse to answer.

Consequently, Mays's attorney decided not to call Barnes as a witness because it could damage the overall credibility of the defense. Clearly, this decision was one of trial tactics, and Mays has not shown how his attorney's performance was deficient. Mays has also not shown how the failure to call Barnes as a witness was prejudicial to the outcome of his trial. Hays testified that Mays was not the person who had delivered the cocaine, essentially to the same effect that any purported testimony of Barnes would have been. The question of credibility of a witness is one for the jury and not for the trial court. *Lancaster v. Schilling Motors, Inc.,* 299 Ark. 365, 772 S.W.2d 349 (1989).

Mays's reliance on *Tosh v. Lockhart,* 879 F.2d 412 (8th Cir. 1989), is also misplaced. There, the court of appeals remanded the case in order that a writ of habeas corpus be granted on the basis of ineffective assistance of counsel. However, the basis for the decision was that the defendant was prejudiced by the absence of alibi testimony; the court quoted the district court, when it

stated:

> '. . . four witnesses, three of them with no interest in the matter one way or the other, are willing to swear that petitioner was somewhere else at the time of the crime. But the jury only heard from one of these witnesses, and that witness was the one whose objectivity was most in doubt.' We agree with the district court that there is a reasonable probability that but for Tosh's counsel's failure to call the . . . alibi witnesses, the result of the trial would have been different.

> (Citations omitted.)

In this case, Barnes not only had some interest in the matter but his testimony would have conflicted in some respects with Detective Howard's and Hays's testimony. As a result, there is no reasonable probability that, but for the decision not to call Barnes as a witness, the result of the trial would have been different.

Mays's second subpoint, dealing with his trial counsel's failure to object to a comment made during the State's closing argument, has not been preserved for appeal. Rule 36.4 provides in pertinent part as follows:

\* \* \* \*

> The trial judge must address the defendants personally and advise the defendant that if the defendant wishes to assert that his or her counsel was ineffective a motion for a new trial stating ineffectiveness of counsel as a ground must be filed within thirty (30) days from the date of pronouncement of sentence and entry of judgment. The judge must further advise the defendant that, if a motion for a new trial is filed asserting facts sufficient to raise an issue whether his or her counsel was ineffective, a hearing will be held, and the time for filing a notice [of] appeal will not expire until thirty (30) days after the disposition of the motion, as provided in Rule 36.22.

Mays failed to assert this matter either in writing or during the trial court's hearing on his claim or ineffective assistance of counsel. We noted in *Taylor* v. *State*, 299 Ark. 123, 771 S.W.2d 742 (1989), that parties on appeal are bound by the

scope and nature of those objections and arguments presented to the trial court for its consideration. Mays simply did not raise this issue as the basis for his objection at the trial court level, and we will not consider arguments made for the first time on appeal. *Edwards* v. *State*, 300 Ark. 4, 775 S.W.2d 900 (1989).

Next, Mays argues in his second point of error that he was denied due process and effective assistance of counsel at the hearing on ineffective assistance of counsel because his second court appointed counsel did not have a transcript of the previous trial, which resulted in his failure to raise trial counsel's handling of the prosecutor's improper argument.

While Rule 36.4 is intended to address claims of ineffective assistance of counsel predicated on a motion for new trial that alleges errors made at the trial level, the rule also requires the assertion of "facts sufficient to raise an issue whether his or her [a defendant's] counsel was ineffective" in order for a hearing on the issue to be held.

In this case, Mays asserted six reasons as the basis for his motion for new trial: 1) the failure of his counsel to call a witness, 2) the failure of his counsel to ask certain questions at trial, 3) the inability of his counsel to verbally acknowledge his innocence, 4) lack of communication with his counsel, 5) the failure of his counsel to correctly acknowledge his case to the jury, and 6) the advice of his counsel to plea bargain.

Accordingly, Mays's second court appointed counsel at the hearing for new trial was not apprised of any argument as to the trial counsel's handling of the prosecutor's closing argument. *See Taylor* v. *State, supra.* Here, second counsel's access to the transcript was unnecessary given Mays's reasons supporting his motion for new trial. As a result, we find neither deficient performance on the part of second counsel nor resulting prejudice.

Finally, on direct appeal, Mays claims that the trial court's response to a remark made by the prosecuting attorney during closing argument constitutes reversible error. During Hays's cross-examination by the prosecuting attorney, the following exchange occurred:

Q Well, how'd you find out about the case?

A Oh, we went out of town, we came back in and this was after the preliminary hearing about the same case. A lady met me at the gas station and asked me, she asked me my name and I said yes, she said are you the one that set that Fat Mays up. I said set him up. She said yeah, an undercover cop testified that you and a Lou Hays had introduced him to a Fat Mays at Taco Bell. And that's when I went home and asked my little brother about it.

As a result, during the State's closing argument, the prosecuting attorney made the following statement that Hays had lied on the witness stand out of fear of retribution from Mays:

And the reason why he had to lie on this particular incident is because he was directly involved in it, this dope deal. It was him and his brother that approached this car, in the first place; it was them that talked up the deal. And it was them that went back and got James and Linda to do the rest of the deal. And the reason that he has to lie in this incident is because of fear of retribution when the person, the Defendant in this case, because the Defendant thinks he got set up. And that is the reason why he would have for getting on the stand today and saying that is not the man who sold dope that day.

Defense counsel objected, "Your honor, I'm going to object. There is absolutely no evidence that my client has offered to —." The trial court overruled the objection and stated, "Mr. Hughes [trial counsel], she [the prosecutor] has a right to interpret the evidence. The jury heard the evidence. She's giving her interpretation of it. If the jury wants to follow her interpretation, they can. If they want to disregard it, they can."

 We reaffirmed in *Williams* v. *State*, 294 Ark. 345, 742 S.W.2d 932 (1988) (quoting *Williams* v. *State*, 259 Ark. 667, 535 S.W.2d 842 (1976) (citing *Simmons & Flippo* v. *State*, 233 Ark. 616, 346 S.W.2d 197 (1961))), that [c]losing arguments must be confined to questions in issue, the evidence introduced and all reasonable inferences and deductions which can be drawn therefrom." The prosecuting attorney's comment at issue is certainly inferable from Hays's testimony; accordingly, there is no error.

Affirmed.