Darren WOODRUFF v. STATE of Arkansas
CR 92-1345                                    856 S.W.2d 299
Supreme Court of Arkansas
Opinion delivered June 28, 1993
[Rehearing denied September 13, 1993.*]

*Newbern and Brown, JJ., would grant rehearing.

*Thomas D. Deen*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. This is a capital murder case. Darren Woodruff was sentenced to life imprisonment without parole for the capital murder of Carlos (a.k.a. "Brizzle") Bogan outside a Eudora nightclub at approximately 1:30 a.m. on June 22, 1991. Woodrull appeals on the basis that the trial court committed error in limiting the cross-examination of a State's witness and in not granting a mistrial because of prejudicial remarks made by the prosecutor. We affirm.

At trial, witnesses called by the State testified that Carlos Bogan was dancing when he swung around a pole in the club and kicked Woodruff. Testimony revealed that Bogan had a "habit" of swinging around poles. Bogan apologized and then Woodruff said, "No, you not gonna get off that easy." Woodruff reportedly went outside. Then, Kevin Leonard went to Bogan and they talked. Five minutes later, Bogan exited the club behind Leonard, presumably to meet Woodruff outside.

Woodruff's brother, Renwick Redmon, testified that, on the night of the shooting, Woodruff had told him that Carlos Bogan had been bothering him, that he and Carlos were in an argument, and that Bogan had confronted him or embarrassed him in some way. Woodruff also told Redmon that if Bogan kept bothering

him, he was going to shoot Bogan in the head. Other testimony revealed that Woodruff had loaned Bogan twenty dollars which had not been repaid.

Witnesses to the shooting testified that after Kevin Leonard and Carlos Bogan exited the nightclub together, they met Woodruff behind the building. There was a verbal disagreement and some pushing. Woodruff and Bogan exchanged words, and Woodruff shot Bogan in the head with a pistol.

Woodruff testified that he carried a gun for protection since he carried cash because he did not trust banks. Woodruff admitted he was drunk when the shooting took place. He testified that Carlos Bogan made sexual advances toward him in the bathroom at the Silver Dollar the night of the shooting. Woodruff said he told his brother that if Bogan approached him again like that, he would "bust his head" with his fist, not shoot Bogan with a gun. Woodruff said he was never kicked by Bogan inside the club.

Woodruff said he went outside to throw up and encountered Carlos Bogan and Kevin Leonard. He said Bogan wanted to borrow twenty dollars, Woodruff refused, and then Bogan and Kevin Leonard got into a pushing match. Bogan asked Woodruff again if he could have the money and then Bogan threatened to forcibly take the money from Woodruff, at which time Woodruff pulled his gun out of his pocket to scare Bogan. He testified that Bogan then jumped at him and pushed him, and the gun went off as Woodruff began falling. In his words, he pulled the trigger by accident.

The autopsy report introduced into evidence revealed that Bogan died from a gunshot wound to the head.

Immediately after the shooting, Woodruff walked around to the front of the club with the gun still in his hand and then fled the scene on foot. He went to Dale Handie's house and asked for a ride across town. During that car ride, the police stopped their car, and Woodruff fled on foot.

The police officer to arrive first on the scene testified that he received a call at 2:00 a.m. to come to the Silver Dollar, which he immediately did and found Carlos Bogan on his side facing downward on the ground behind the nightclub in a dark area between the club and an abandoned building. Bogan had a weak

pulse, and his vital signs quickly disappeared despite the officer's attempt to resuscitate him.

Woodruff was arrested three days later. The Chief of Police of the Eudora Police Department testified that after his rights were read to him, Woodruff voluntarily confessed to shooting Bogan and said he had just "forgot about the whole thing when he shot Carlos." Woodruff also allegedly said he didn't mean to kill Bogan, although at trial Woodruff denied making any statement to the police.

## LIMITED CROSS-EXAMINATION

The State called a rebuttal witness, Edward Grant, to show that Woodruff had made threatening comments about Bogan before the shooting in order to rebut Woodruff's testimony that there was no intent and that the shooting was merely an accident.

In a nutshell, Grant testified that he heard Woodruff call Bogan into the street, and that Bogan got "loud with him." Grant then said he asked Woodruff what the argument was about, and Woodruff said it was about a loan, and that, "The next time I'm gonna call him out . . . if he get loud, everybody gonna know about it." Grant further testified that he was outside with other parties when he heard Bogan say, "Ya'll ain't going to do nothing to me." Grant then said he saw the gun in Woodruff's hand fire and Bogan fall to the ground.

At trial, Woodruff claimed that it was error for the court to prevent him from cross-examining Grant on the fact that Grant was being held in jail pending trial on felony charges at the time he testified against Woodruff. The State replied generally that the witness should not be questioned on these issues unless there was a conviction going to his truth and veracity.

The exchange in question reads as follows:

(RECESS)

(Whereupon, the following was held at the Bench out of the hearing of the jury.)

MR. POPE (PROSECUTOR): The State anticipated calling Edward Grant as a rebuttal witness. He is presently in jail (inaudible). He had a conviction on that

(inaudible).

MR. COLVIN (DEFENSE COUNSEL): I object to being precluded from asking him what his present circumstances are and why he's charged. He is not the Defendant, and therefore he has no Constitutional rights protecting him (inaudible), and that goes to the credibility of his testimony.

MR. POPE: No, sir, it's not a Constitutional issue. It's evidentiary issues and (inaudible) the Defendant should not — the witness should not be questioned on those issues unless there is a conviction going to truth and veracity in this instance. It's not — it's just a charge, it's not a conviction.

THE COURT: Well, I'm gonna — excuse me, Mr. Colvin, I'm gonna deny your motion.

MR. COLVIN: Yes, sir, but, Your Honor, he is in jail, and, ah, he's testifying in a criminal case (inaudible), and that is an element of his credibility that the jury should know to determine how much, ah, weight to give his testimony as to credibility.

THE COURT: No, sir I'm ruling — I'm ruling against you. Save your exceptions.

MR. COLVIN: On the basis of the witness, and he is not a Defendant in this cause.

THE COURT: I understand, but you're overruled, save your exceptions.

We'll be in session now.
(Whereupon, the following was held in open court.)

MR. COLVIN: I do save my exceptions, Your Honor, just to make sure.

As a preliminary matter, Woodruff incorrectly argues that abuse of discretion is not the proper standard of review, but we repeat that it is indeed the correct standard. *Sheridan* v. *State*, 313 Ark. 23, 852 S.W.2d 772 (1993); *Jarrett* v. *State*, 310 Ark. 358, 833 S.W.2d 779 (1992). We have said that the use of cross-examination is an important tool in bringing the facts before the

jury and wide latitude should be afforded by the trial court. *Carmichael* v. *State*, 296 Ark. 479, 757 S.W.2d 944 (1988); *Hoback* v. *State*, 286 Ark. 153, 689 S.W.2d 569 (1985); *Trammel* v. *State*, 193 Ark. 21, 97 S.W.2d 902 (1936). Even so, the trial court must determine when the matter has been sufficiently developed and the outer limits have been reached, and unless the trial court's discretion is abused, we will not reverse. *McCorkle* v. *State*, 270 Ark. 679, 607 S.W.2d 655 (1980).

In examining the colloquy between court and counsel relating to defense counsel's desire to cross-examine Grant concerning Grant's "present circumstances" of being in jail and "why he's charged," defense counsel said that this information "is an element of his credibility that the jury should know to determine how much . . . weight to give his testimony as to credibility", we can envision several different reasons why Woodruff's counsel would want to cross-examine Grant. However, it is not apparent from the context of his questions or his statements to the trial court as to why Grant was in jail, or what possible bearing his incarceration might have on Woodruff's trial. Counsel did not furnish or suggest to the trial court any of our rules of evidence or case law which would support his questions concerning Woodruff's incarceration. Furthermore, Woodruff's counsel did not claim or even make mention to the trial court that the information he sought could have a potential of showing bias or motive on the part of Grant.

On appeal, Woodruff now states that the evidence of Grant's incarceration showed a compelling motive to slant his testimony and that impeachment for bias on the issue cannot be denied. This is a new argument, and we have long held that we will not consider arguments on appeal which were not raised below. *Furman* v. *Holloway*, 312 Ark. 378, 849 S.W.2d 520 (1993); *Campbell* v. *State*, 311 Ark. 641, 846 S.W.2d 639 (1993); *Tisdale* v. *State*, 311 Ark. 220, 843 S.W.2d 803 (1992).

Granted, we have stressed the importance of allowing wide latitude with respect to the admission of evidence relevant to the bias of the witness, *see Wilson* v. *State*, 289 Ark. 141, 712 S.W.2d 654 (1986) and *Simpson* v. *State*, 274 Ark. 188, 623 S.W.2d 200 (1981); however, the argument must be properly raised and preserved for appeal.

Woodruff further argues that his constitutional rights under the Confrontation Clause of the United States Constitution were violated in that the trial court had limited his cross-examination, citing *Delaware* v. *Van Arsdall*, 475 U.S. 673 (1986), *Davis* v. *Alaska*, 415 U.S. 308 (1974), and *Alford* v. *United States*, 282 U.S. 687 (1931). U.S. Const. amend. VI. While there is a fundamental right to wide latitude in cross-examination to impeach a witness, we do not delve into the constitutional issues of confrontation since Woodruff failed to make this argument below. Again, we will not consider new arguments on appeal. *Furman* v. *Holloway, supra*; *Campbell* v. *State, supra*; *Tisdale* v. *State, supra*.

In sum, it was Woodruff's responsibility to explain to the trial court the basis upon which he desired to cross-examine Grant concerning his incarceration. Although not required to do so, a proffer of testimony under our Ark. R. Evid. 103(a)(2) would have made known to the trial court the substance of the evidence that he was asking for and, of course, would have satisfactorily explained to the court his intentions. By not doing so, Woodruff cannot now be heard to complain.

## PROSECUTOR'S COMMENTS DURING CLOSING ARGUMENT

Woodruff next argues that the trial court committed prejudicial error by refusing to grant a mistrial following the prosecution's reference during closing on rebuttal to a witness' comment that Woodruff smiled after the shooting.

The State called Michael Holts, a witness to the shooting, who said, "I seen the fire jump out the gun, and I seen Brizzle [the victim] hit the ground, and I seen Brizzle, and I seen Darren turn around and smile and walked off."

In his rebuttal closing argument, the prosecutor told the jury, "And if you don't pay the price [by convicting Woodruff], I'll guarantee you, sooner or later he's gonna be grinning at you, just like . . ." At that point, defense counsel requested to approach the bench, the prosecutor repeated that Woodruff grinned when he killed Carlos Bogan, and defense counsel asked for a mistrial. The prosecution did not return to its closing, and the court instructed the jury. Woodruff did not ask the trial court

to issue an admonitory instruction.

We have said many times that the trial court has discretion to control closing argument and is in a better position to determine the possibility of prejudice by observing the argument first hand. *Sheridan* v. *State, supra; Wainwright* v. *State,* 302 Ark. 371, 790 S.W.2d 420 (1990), *cert. denied,* 111 S. Ct. 1123 (1990). The appellate court will not reverse the action of the trial court in matters pertaining to its controlling, supervising, and determining the propriety of the arguments of counsel in the absence of manifest gross abuse. *Miller* v. *State,* 269 Ark. 341, 605 S.W.2d 430 (1980). There was no such gross abuse here.

We have also repeatedly stated the rule that closing arguments must be confined to questions in issue, the evidence introduced during the trial, and all reasonable inferences and deductions which can be drawn therefrom. *Mays* v. *State,* 303 Ark. 505, 798 S.W.2d 75 (1990). *See Wilburn* v. *State,* 292 Ark. 416, 730 S.W.2d 491 (1987); *McCroskey* v. *State,* 271 Ark. 207, 608 S.W.2d 7 (1980); *Williams* v. *State,* 259 Ark. 667, 535 S.W.2d 842 (1976); *Simmons & Flippo* v. *State,* 233 Ark. 616, 346 S.W.2d 197 (1961). Where an attorney's comment during closing arguments is directly reflecting or inferable from testimony at trial, there is no error. The prosecutor's reference to Woodruff "grinning" was not an inference but was a direct reference to Michael Holts' testimony that he saw Woodruff smile after the shooting.

Not only was the prosecutor's comment directly taken from the testimony at trial, we further hold that there was no error since Woodruff failed to request that the judge issue an admonitory instruction to the jury. *Aaron* v. *State,* 312 Ark. 19, 846 S.W.2d 655 (1993) (a mistrial will only be declared if any possible prejudice cannot be removed with an admonition to the jury). *See State* v. *Wheat,* 295 Ark. 178, 747 S.W.2d 112 (1988). Failure to give an admonitory or cautionary instruction, or one limiting the effect of testimony or the purpose for which it may be considered, is not reversible error where one is not requested. *Perry* v. *State,* 255 Ark. 378, 500 S.W.2d 387 (1973).

A similar closing argument was made by a prosecutor in *Miller* v. *State,* 269 Ark. 341, 605 S.W.2d 430 (1980):

. . . [T]he Deputy Prosecuting Attorney [said] in the closing of the penalty stage of appellant's trial:

I don't think that you can lay down at night, sleep knowing that you have allowed this man to live with the possibility of escaping again. He has already escaped once. He is an escapist.

Ladies and gentlemen, I don't mean to create fear in you, but if you did do that, sentence him to life imprisonment with his having escaped once already and plan on holding him in any institution, I don't care what kind of institution it is, any institution for forty years or better, you are taking a terrific risk.

Appellant's counsel did not request the court to admonish the jury concerning these remarks. He did move for a mistrial based on them, but this motion was denied by the trial court. Appellant contends that the only logical inference that can be drawn from the statements is that the deputy prosecutor was telling the members of the jury that their lives would be in danger unless they sentenced appellant to death. However, the deputy prosecutor went on to explain that he was interrupted and that he was about to explain that the risk would be to members of society in general, not to the members of the jury. The trial court accepted this explanation, and, as noted, denied appellant's motion for mistrial. We will not reverse the action of the trial court in matter [sic] pertaining to its controlling, supervising, and determining the propriety of the arguments of counsel in the absence of manifest gross abuse.

Had appellant's counsel requested the court to admonish the jury, the question of refusal would have been presented, but the failure to give an admonitory instruction is not prejudicial error in the absence of a request. Prior to the closing arguments, the court had given the jury an instruction that "closing arguments, of the attorney are not evidence" and that "remarks of attorneys having no basis in the evidence should be disregarded by you." We find no abuse of discretion by the trial court in denying appellant's motion for a mistrial. A mistrial is an extreme and drastic remedy which should be resorted to only when there has

been an error so prejudicial that justice could not be served by continuing the trial.

*Miller* at 348-9, 605 S.W.2d at 345 (citations omitted).

As in *Miller*, we see no abuse of discretion by the trial court in denying Woodruff's motion for a mistrial.

The record has been examined in accordance with Ark. Sup. Ct. R. 4-3(h), and it has been determined that there were no rulings adverse to the appellant which constituted prejudicial error.

Affirmed.

DUDLEY, NEWBERN AND BROWN, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. The majority opinion dismisses the Trial Court error in the limitation of cross-examination in this case by suggesting Woodruff's objection was insufficient to raise the issue. I disagree. The conviction should be reversed and remanded.

The majority opinion acknowledges that defense counsel had reasons for wanting to cross examine Grant, the opinion specifically recognizes defense counsel's statement to the Trial Court that the matter of Grant's incarceration "is an element of his credibility that the jury should know to determine how much . . . weight to give his testimony. . . . But then the opinion states:

> However, it is not apparent from the context of his questions or his statements to the trial court as to why Grant was in jail, or what possible bearing his incarceration might have on Woodruff's trial. Counsel did not furnish or suggest to the trial court any of our rules of evidence or case law which would support his questions concerning Woodruff's incarceration. Furthermore, Woodruff's counsel did not claim or even make mention to the trial court that the information he sought could have a potential of showing bias or motive on the part of Grant.

For this Court to acknowledge that defense counsel was questioning credibility based on the fact that the witness was incarcerated by the State, a party to the case, and then to say there was no claim of a "bias" or "motive" on the part of the witness is

incredible.

As stated in the majority opinion, defense counsel expressed his desire to let the jury know the status of the State's witness, Grant, so jurors could have facts necessary to assessment of the witness's credibility. Credibility is a broad term which encompasses many different aspects of a witness's manner of and motivation for presenting testimony. There can be no doubt that the fact of incarceration and it's motivating influence on a witness's testimony is a critical component in determining his credibility which should be presented to the jury.

In *Henderson* v. *State*, 279 Ark. 435, 652 S.W.2d 16 (1983), we made it clear that questions about the status of the individual testifying were admissible on cross-examination to show bias. We said:

> It is generally permissible for a defendant to show by cross-examination anything bearing on the possible bias of the testimony of a material witness. *Bethel* v. *State*, 162 Ark. 76, 257 S.W. 740; *Ringer* v. *State*, 74 Ark. 262, 85 S.W. 410; Annot. 62 A.L.R. 2d 611 (1958). This rule applies to testimony given under expectation or hope of immunity or leniency or *under the coercive effect of his detention by authorities* [emphasis supplied]. *Stone* v. *State*, [162 Ark. 154, 258 S.W. 116]; *Boyd* v. *State*, [215 Ark. 156, 219 S.W.2d 623]. *See also Campbell* v. *State*, 169 Ark. 286, 273 S.W. 1035; *Alford* v. *U.S.*, [282 U.S. 687 (1930)]. The test is the expectation of the witness and not the actuality of a promise. *State* v. *Little*, [87 Ariz. 295, 350 P.2d 756]; *Spaeth* v. *United States*, 232 F.2d 776, 62 A.L.R. 2d 606 (6 Cir., 1956).

> \* \* \*

> Denial of cross-examination to show the possible bias or prejudice of a witness may constitute constitutional error of the first magnitude as violating the Sixth Amendment right of confrontation. *Davis* v. *Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

It is also wrong for this Court to bolster its opinion by saying defense counsel in this case did not cite rules of evidence or cases in support of his desire to cross examine Grant. The suggestion is

that defense counsel should have entered upon his cross examination of Grant armed with citations. Given the authorities cited above, I can think of no reason defense counsel should have anticipated any serious question about whether he could cross examine Grant about his incarceration. The colloquy between defense counsel and the Trial Court quoted in the majority opinion demonstrates that defense counsel was summarily prevented from pursuing the matter and was given no opportunity to research the point and argue rules or cases.

The evidence against Woodruff was strong, but that is not the question being addressed here. We must treat everyone by the same rules. If we are to maintain the quality of procedural justice we have achieved for criminal trials we cannot give up our regard for the right of any accused to engage in the adversary process, no matter how strong the evidence of guilt. Fair play requires us to abide by the rules of evidence, honor the Sixth Amendment, and not to curtail the right of cross-examination which goes to the very essence of the rights of an accused. Woodruff was entitled to a fair trial, and he did not get one.

I respectfully dissent.

DUDLEY and BROWN, JJ., join in this dissent.